UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA            *

V.                                  *        CRIMINAL NO. W-09-CR-151(2)

ARTURO OLOVERIG AGLIPAY, JR.        *

FACTUAL BASIS

Had this case proceeded to trial, the United States Attorney for the Western District of Texas

was prepared to prove and would prove beyond a reasonable doubt that:

COUNT TWO
THE BANKS

(1.)     During the time period covered in the Indictment:

(a.)     American Bank of Texas was a bank whose deposits were then insured by the Federal

Deposit Insurance Corporation (FDIC).

(b.)     Compass Bank was a bank whose deposits were then insured by the FDIC.

(c.)     First State Bank was a bank whose deposits were then insured by the FDIC.

(d.)     Bank of America was a bank whose deposits were then insured by the FDIC.

(e.)     Capitol One Bank was a bank whose deposits were then insured by the FDIC.

(f.)     Amergy Bank was a bank whose deposits were then insured by the FDIC.

(g.)     South Central Bank was a bank whose deposits were then insured by the FDIC.

(h.)     Lott State Bank was a bank whose deposits were then insured by the FDIC.

(i.)     National Bank of Central Texas was a bank whose deposits were then insured by the

FDIC.

THE SCHEME

(2.)     Beginning at least as early as June, 2007, the exact date unknown to the Grand Jury, and continuing up to on or about July 16, 2009, in the Western District of Texas and elsewhere, the Defendant,

**ARTURO OLOVERIG AGLIPAY, JR.,**

did willfully combine, conspire, confederate, and agree, together and with each other and others, to execute and attempt to execute a scheme and artifice to defraud financial institutions, to-wit: banks whose deposits were then insured by the FDIC, and to obtain money, funds, creditors, assets, securities, and other property owned by and under the custody and control of the financial institutions by means of false and fraudulent pretenses, representations, and promises.

(3.)     It was part of the scheme and artifice that the Defendants target banks across the United States by walking into the banks and representing to a teller that their credit cards were not working properly and that they had the credit card company on the cell phone in an attempt to effectuate a cash advance.  The co-conspirators would then hand the teller the cell phone and another co-conspirator on the cell phone would pretend to be the credit card company.  The cash withdrawal would then be effectuated with the teller who had conducted the transaction and provide the cash advance to one of the co-conspirators.  The banks would learn later that the transactions were fraudulent.

(4.)     Defendant THOMAS A GRANT would travel to banks and conduct fraudulent credit card cash advance transactions.  GRANT would then wire a portion of the proceeds to Defendant AGLIPAY in California.

2

(5.)    Defendant TERRENCE SMITH would travel to banks and conduct fraudulent cash advance transactions.  SMITH would then wire a portion of the proceeds to Defendant AGLIPAY in California.

(6.)    Defendant AGLIPAY would pretend to be a credit card company representative on the telephone and he would convince the bank tellers that an off line credit card cash advance had been authorized.  Defendant AGLIPAY would then collect a portion of the illegal proceeds when Defendant GRANT, Defendant SMITH and others would wire the illegal proceeds to Defendant AGLIPAY in California.

(7.)    Defendant CERINA L. JIONGO provided transportation to Defendant SMITH when he would go to banks to conduct the fraudulent credit card cash advance scheme.  Defendant JIONGO also rented her car to Defendant SMITH and other so that they could travel to Kentucky to conduct the fraudulent credit card cash advance scheme.  Defendant JIONGO was paid for the rental of her vehicle with a portion of the illegal proceeds from the scheme.

(8.)    Defendant EL DANAGHRAH drove Defendant SMITH to Kentucky for the purpose of conducting the fraudulent credit card cash advance scheme and was paid a portion of the proceeds from the scheme.

(9.)    In order to execute the scheme to defraud:

(a.)    On or about July 6, 2009, Defendant GRANT conducted a fraudulent credit card cash advance transaction at American Bank of Texas in Temple, Texas, in the amount of $4,400.00.

(b.)    On or about October 10, 2008, Defendant GRANT conducted a fraudulent credit card cash advance transaction at the Compass Bank, Temple, Texas, in the amount of $1,500.00.

(c.)    On or about December 16, 2008, Defendant GRANT conducted a fraudulent credit card cash advance transaction at the First State Bank, Temple, Texas, in the amount of $4,400.00.

(d.)    On or about December 16, 2008, Defendant GRANT conducted a fraudulent credit card cash advance transaction at the Bank of America, Austin, Texas, in the amount of $4,400.00.

(e.)    On or about June 6, 2009, Defendant GRANT conducted a fraudulent credit card cash advance transaction at Capitol One Bank in baton Rouge, Louisiana, and obtained $2,500.00 in cash.

(f.)    On or about April 16, 2009, Defendant GRANT attempted to conduct a fraudulent credit card cash advance at Amergy Bank, League City, Texas.

(g.)    On or about June 15, 2009, Defendant SMITH conducted a fraudulent credit card cash advance transaction at Branch Banking and Trust, Bowling Green, Kentucky, and obtained $2,500.00.

(h.)    On or about June 15, 2009, Defendant EL-DANAGHRAH drove Defendant SMITH from Texas to Kentucky in order to conduct the fraudulent credit card cash advance scheme.

(i.)    On or about July 9, 2009, Defendant SMITH conducted a fraudulent credit card cash advance transaction at Lott State Bank, Marlin, Texas, and obtained $2,000.

(j.)    On or about July 15, 2009, Defendant SMITH conducted a fraudulent credit card cash advance transaction at The national Bank of Central Texas, Copperas Cove, Texas, and obtained $4,000.00.

(k.)    On or about June 23, 2009, Defendant SMITH wired cash to Defendant JIONGO from Frankfurt, Kentucky to Belton, Texas.  This cash represented illegal proceeds from the fraudulent credit card advance scheme.

(l.)    On or about July 7, 2009, Defendant JIONGO and Defendant SMITH travelled to American Bank, Temple, Texas, and attempted the fraudulent credit card cash advance scheme.

(m.)    On or about July 16, 2009, Defendant SMITH wired illegal proceeds from the fraudulent credit card cash advance scheme to Defendant AGLIPAY from Killeen, Texas to Los Angeles, California;

Contrary to Title 18, United States Code, Section 1344, and all in violation of Title 18, United States Code, Section 1349.

Specifically, the United States Attorney would prove beyond a reasonable doubt that:

That THOMAS A. GRANT, ARTURO OLOVERIG AGLIPAY, JR. (aka "June"), TERRENCE SMITH, CERINA L. JIONGO and SULAIMAN EL DANAGHRAH (aka "Shawn"), entered into a conspiracy to commit bank fraud from at least as early as June, 2007, and continuing up to on or about July 16, 2009.  The conspiracy involved approximately a half a million dollars and victim banks located in the Waco Division of the Western District of Texas and other states. GRANT, SMITH and other co-conspirators targeted banks by walking into the various banks and representing to a teller that their credit cards were not working properly and that they wanted to obtain a credit card cash advance.  GRANT, SMITH and other co-conspirators falsely and fraudulently claimed to have their credit card representative on their cell phone.  GRANT, SMITH and other co-conspirators would then hand their phone to the bank teller and another co-conspirator, usually ARTURO OLOVERIG AGLIPAY, JR., aka "June," would be on the other end of the call pretending to be a representative from the credit card company.  The bank teller would then effectuate a credit card cash advance based on the instructions and fraudulent authorization of AGLIPAY on the telephone.  The teller would then provide cash to GRANT or other co-

conspirators.  The bank would later learn that the transaction was fraudulent because the credit card and/or credit card number were fraudulent.

GRANT travelled to numerous banks and conducted fraudulent credit card cash advance transactions.  Some of the fraudulent transactions that GRANT conducted were at The American Bank of Texas in Temple, Texas, on or about July 6, 2009, in the amount of $4,400; The Compass Bank, Temple, Texas, on or about October 10, 2008, in the amount of $1,500; The First State Bank, Temple, Texas, on or about December 16, 2008, in the amount of $4,400.  All the above banks are located in the Waco Division of the Western District of Texas.  GRANT also conducted fraudulent credit card cash advance transactions in Austin, Texas; League City, Texas; and Baton Rouge, Louisiana, among other locations.

Fraudulent credit card cash advance transactions were also conducted by TERRENCE SMITH at The Lott State Bank, Marlin, Texas, on or about July 9, 2009, in the amount of $2,000, and The National Bank of Central Texas, Copperas Cove, Texas, on or about July 15, 2009, in the amount of $4,000.  These banks are located in the Waco Division of the Western District of Texas. SMITH also conducted fraudulent transactions in other locations including The Branch Banking and Trust, Bowling Green, Kentucky, on or about June 15, 2009, and obtained $2,500.  SMITH also, on July 16, 2009, wired illegal proceeds from the fraudulent credit card cash advance scheme to AGLIPAY from Killeen, Texas, to Los Angeles, California.

CERINA JIONGO participated in the conspiracy by loaning her car to SMITH and SULAIMAN EL DANAGHRAH, aka "Shawn," so that they could travel to Kentucky from Central Texas in order to conduct the bank fraud scheme.  JIONGO was paid money for the use of her car.

JIONGO and SMITH also travelled to American Bank, Temple, Texas, on or about July 7, 2009, and attempted the bank fraud scheme but were turned away by the bank employees.

On July 10, 2009, Belton police officers were executing an arrest warrant at the La Quinta Hotel in Belton, Texas.  During the execution of the warrant, officers found THOMAS A. GRANT at the hotel with two fake U.S. military identification documents, a computer, printer and laminator. Special agents from the United States Secret Service were called and apprised GRANT of his constitutional protections.  GRANT agreed to cooperate and told the Secret Service that he obtained the fake military identification documents so that he could continue his participation in the bank fraud scheme. GRANT told investigators that he worked for AGLIPAY and that they were part of a bank fraud scheme.  The scheme was described as follows: GRANT or other co-conspirators, including TERRENCE SMITH, would walk into a bank and pretend to have their credit card company on the line, when in fact AGLIPAY was on the line pretending to be the credit card company.  GRANT would hand the phone to the teller and AGLIPAY would instruct the teller to conduct the credit card transaction giving the teller the proper codes, etc.  The teller would then give GRANT the money and he would leave the bank.  He would then wire a portion of the illegal proceeds to AGLIPAY in California, where AGLIPAY lives.  Secret Service agents then went to the various banks, obtained documentation for the transactions, including surveillance photographs of GRANT, SMITH  and others conducting the fraudulent transactions.  Agents also obtained Western Union and Money Gram transactions showing GRANT and SMITH wiring money to AGLIPAY in California.  When AGLIPAY collected the money, he used his driver's license as identification.

Based upon information provided by GRANT, agents located CERINA JIONGO, and after apprising her of her constitutional protections, she admitted that she had driven TERRENCE SMITH to two banks in San Antonio and one in Temple for the purpose of conducting the bank fraud scheme. JIONGO cooperated and told agents about how the scheme worked, which was exactly as GRANT had described. JIONGO also admitted to being paid for the use of her car from the illegal proceeds. JIONGO also told agents that she did not trust SMITH to drive her car to Kentucky to conduct the bank fraud scheme so she enlisted the help of EL DANAGHRAH, whom she knew.

EL DANAGHRAH was interviewed by Secret Service agents and, after being apprised of his constitutional protections, agreed to cooperate. EL DANAGHRAH stated that he agreed to drive SMITH to Kentucky and Smith told him they were going to conduct the bank fraud scheme. EL-DANAGHRAH told agents he believed he was paid approximately $500 for being the driver. While in Kentucky, EL DANAGHRAH and SMITH went to a Wal-Mart so that money could be wired to AGLIPAY after they had obtained cash in the bank fraud scheme.

On July 23, 2009, agents went to the Stratford House Inn in Temple, Texas, which is located in the Waco Division of the Western District of Texas, where Bell County Sheriff's deputies were executing an arrest warrant for TERRENCE SMITH. SMITH answered the door to one of the rooms at the motel. SMITH was advised of his constitutional protections and agreed to cooperate. SMITH consented to the search of his room and law enforcement found several documents indicating fraudulent credit card cash advance transactions , approximately $2,500 in cash, and a quantity of methamphetamine and marijuana. SMITH told investigators that he was part of a bank fraud scheme involving fake credit cards. He described the scheme exactly as GRANT and JIONGO had described it. He admitted his participation and told investigators that he had wired illegal

8

proceeds to AGLIPAY.  SMITH, as GRANT had done, also told investigators that he knew of two people in Houston who were also involved in the scheme.

Each of the banks listed in the Superseding Indictment were banks whose deposits were insured by the FDIC at the time of the offense.  The object of the conspiracy entered into by GRANT and the co-conspirators was to execute and attempt to execute a scheme and artifice to defraud financial institutions, which were insured by the FDIC, and to obtain money, funds, credit, assets, securities and other property owned by and under the custody and control of the financial institutions by means of false and fraudulent pretenses, representations, and promises.

Respectfully submitted,

JOHN E. MURPHY
United States Attorney

/s/ Gregory S. Gloff

By:   GREGORY S. GLOFF
Assistant United States Attorney

9